UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X
                                                                   :
TOUCHSTONE STRATEGIC TRUST et al.,                                 :
                                                                   :
                              Plaintiffs,                          :
                                                                   :  19-CV-1876 (JMF)
              -v-                                                  :
                                                                   :  OPINION AND ORDER
GENERAL ELECTRIC COMPANY et al.,                                   :
                                                                   :
                              Defendants.                          :
                                                                   :
-------------------------------------------------------------------X

JESSE M. FURMAN, United States District Judge:

      Plaintiffs, a group of Ohio-based entities,[1] bring claims under Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. §§ 78j(b), 78t(a), and Securities and Exchange Commission ("SEC") Rule 10b-5 ("10b-5"), 17 C.F.R. § 240.10b-5; under the Ohio Securities Act, O.R.C. § 1707.43; and for common law fraud against Defendants General Electric Company ("GE") and four of its former executives, Jeffrey R. Immelt, Jeffrey S. Bornstein, Jamie S. Miller, and Keith S. Sherin. Many of Plaintiffs' claims mirror those brought on behalf of a putative class in *Sjunde AP-Fonden v. General Electric Co.*, No. 17-CV-8457 (JMF) (S.D.N.Y) (the "*Sjunde* Class Action"), claims that the Court largely — although not entirely — dismissed in a pair of earlier rulings. *See Sjunde AP-Fonden v. Gen. Elec. Co.*, 417 F. Supp. 3d 379 (S.D.N.Y. 2019) ("*Sjunde I*"); *Sjunde AP-Fonden v. Gen. Elec. Co.*, No. 17-CV-8457 (JMF), 2021 WL 311003 (S.D.N.Y. Jan. 29, 2021) ("*Sjunde II*"). Their other claims are similar to those brought on behalf of a putative class in *In re General Electric Securities*

---

[1]     Plaintiffs are Touchstone Strategic Trust, Touchstone Variable Series Trust, the Western and Southern Life Insurance Company, Western-Southern Life Assurance Company, Western & Southern Financial Group, Inc., and Integrity Life Insurance Company.

*Litigation*, No. 19-CV-1013 (DLC) (S.D.N.Y), claims that the Honorable Denise L. Cote dismissed over two years ago, *see In re Gen. Elec. Sec. Litig.*, No. 19-CV-1013 (DLC) 2020 WL 2306434 (S.D.N.Y. May 7, 2020) ("*TRS*"), *aff'd*, 844 F. App'x 385 (2d Cir. 2021) (summary order). Defendants now move, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, to dismiss the claims in this case. For the reasons that follow, the motion is GRANTED.

## A WORD ON PLAINTIFFS' SOURCES

As a threshold matter, the Court must briefly address some of the sources on which Plaintiffs rely for the allegations in their Complaint. Plaintiffs, who have opted out of putative class actions in *Sjunde* and *TRS*, *see Sjunde* Class Action, ECF No. 343 (confirming that Plaintiffs opted-out of the class certified in *Sjunde*), bring three sets of claims in their Second Amended Complaint (the "SAC"), ECF No. 33 ("SAC"), most of which the Court or Judge Cote addressed previously, *see Sjunde I*, 417 F. Supp. 3d 379, *Sjunde II*, 2021 WL 311003, *TRS*, 2020 WL 2306434.[2] Plaintiffs' claims rest on many of the very same allegations made in the putative class actions, including information derived from former employee confidential witnesses set forth in the *Sjunde* operative complaint, *see Sjunde* Class Action, ECF No. 191 ("CAC"), that Plaintiffs here concededly did not interview themselves. SAC ¶¶ 77, 183-84; ECF No. 40 ("Pls.' Opp'n"), at 6. In an effort to bolster their allegations, Plaintiffs also rely heavily on an Order memorializing a settlement between the SEC and GE, ECF No. 37-27 ("SEC Order"); *see, e.g.*, SAC ¶¶ 4, 9, 12, 16, 19-20, 48, 54, 57, 59-61, 64-65, 66-67, 72, 74-79, 82, 91, 93, 141, 174-81,

---

[2]   The Court incorporates by reference the discussion of both the relevant background and the applicable legal standards in *Sjunde I* and *Sjunde II*, and *TRS*, familiarity with which is presumed. *See Sjunde I*, 417 F. Supp. 3d 379, *Sjunde II*, 2021 WL 311003, *TRS*, 2020 WL 2306434. The Court discusses allegations relevant to this motion in the discussion that follows.

213, as well as investigative reporting, including articles published in the *Wall Street Journal*, ECF No. 37-23, and a book titled *Lights Out: Pride, Delusion, and the Fall of General Electric*, ECF No. 37-26; *see, e.g.*, SAC ¶¶ 4-5, 9-11, 13-14, 20, 39, 49-50, 62-65, 68, 70, 73, 103-12, 117-20, 122, 150, 182-83.

The Court recently addressed an overlapping set of claims brought against GE based on many of the same sources — namely, the confidential witnesses set forth in the *Sjunde* operative complaint and the SEC Order. *See Amorosa v. Gen. Elec. Co.*, No. 21-CV-3137 (JMF), 2022 WL 3577838 (S.D.N.Y. Aug. 19, 2022) ("*Amorosa*"). As the Court explained there, "[c]ourts 'generally do not consider averments taken directly from uncorroborated allegations embedded in a complaint in another action or parroted allegations for which counsel has not conducted independent investigation.'" *Id.* at 1 (quoting *N. Collier Fire Control & Rescue Dist. Firefighter Pension Plan & Plymouth Cnty. Ret. Ass'n v. MDC Partners, Inc.*, No. 15-CV-6034 (RJS), 2016 WL 5794774, at *8 (S.D.N.Y. Sept. 30, 2016)). More specifically, the Court noted that "'[w]hen citing alleged confidential witnesses in a complaint, the certification means that counsel has spoken with these confidential witnesses and knows who they are.'" *Id.* (quoting *In re Lehman Bros. Sec. & Erisa Litig.*, No. 09-MD-2017 (LAK), 2013 WL 3989066, at *4 (S.D.N.Y. July 31, 2013)). Thus, reliance on "the statements of confidential witnesses in another complaint . . . is impermissible, particularly in light of counsel's personal non-delegable responsibility under Rule 11 [of the Federal Rules of Civil Procedure] to validate the truth and legal reasonableness of the papers filed." *Id.* (cleaned up). This reasoning applies in equal force to the Complaint here.

In *Amorosa*, the Court found that reliance on the SEC Order was also problematic. As the Court noted, "the Second Circuit has held that 'portions of [an] SEC order quoted in [a] complaint are in the nature of allegations "upon information and belief," which cannot ordinarily

form the basis of a fraud claim.'" *Id.* at \*2 (quoting *Loreley Fin. (Jersey) No. 3 Ltd. v. Wells Fargo Sec., LLC*, 797 F.3d 160, 180 (2d Cir. 2015)).  Moreover, "the Second Circuit has cautioned that 'a consent judgment between a federal agency and a private corporation which is not the result of an actual adjudication of any of the issues' — such as the SEC Order in this case, which includes a proviso that GE neither admits nor denies the SEC's allegations — 'cannot be used as evidence in subsequent litigation between that corporation and another party.'"  *Id.* (quoting *Lipsky v. Commonwealth United Corp.*, 551 F.2d 887, 893 (2d Cir. 1976)) (citation omitted).  Thus, "[a]lthough there is no absolute rule barring a private plaintiff from relying on government pleadings and proceedings in order to meet the requirements of Rule 9(b) of the Federal Rules of Civil Procedure and the Private Securities Litigation Reform Act of 1995 ('PSLRA'), a court must be mindful of the limitations of such records."  *Id.* (cleaned up).  Once again, these observations apply in equal force to Plaintiffs reliance on the SEC Order here.

Finally, Plaintiffs' reliance on investigative reporting is not inherently suspect or problematic.  *See, e.g.*, *Altimeo Asset Mgmt. v. Qihoo 360 Tech. Co.*, 19 F.4th 145, 150-51 (2d Cir. 2021) (relying in part on news reporting to infer that a statement in the defendant company's proxy materials was misleading and reversing the district court, which had disregarded the articles on the ground that they did not provide sufficient details).  That said, such allegations "should be credited only to the extent that other factual allegations would be — if they are sufficiently particular and detailed to indicate their reliability."  *In re Optionable Sec. Litig.*, 577 F. Supp. 2d 681, 690 (S.D.N.Y. 2008).  Put differently, "[c]onclusory allegations of wrongdoing are no more sufficient if they come from a newspaper article [or book] than from plaintiff's counsel."  *Id.*

With that, the Court will turn to Plaintiffs' claims.

## DISCUSSION

Plaintiffs' claims relate to Defendants' statements or omissions with respect to three topics. Plaintiffs' first set of claims, which mirrors claims that were brought in *Sjunde*, concerns GE Power's long term service agreements ("LTSAs"), and, in particular, GE's use of factoring or deferred monetization. SAC ¶¶ 52-100; ECF No. 40 ("Pls.' Opp'n"), at 2, 13-25; *see also Sjunde I*, 417 F. Supp. 3d at 387-89, 404-14. Their second set of claims, which also mirrors claims that were brought in *Sjunde*, concerns GE's long-term care ("LTC") insurance portfolio. SAC ¶¶ 149-215; Pls.' Opp'n 2, 9-13; *see also Sjunde I*, 417 F. Supp. 2d at 385-87, 392-404. Their final set of Section 10(b) and Rule 10b-5 claims, which mirror claims that were brought in *TRS*, relate to GE's November 2015 acquisition of Alstom's Thermal, Renewables and Grid businesses. SAC ¶¶ 101-148; Pls.' Opp'n 2, 26-37; *see also TRS*, 2020 WL 2306434.

The Court will discuss each in turn, followed by Plaintiffs' claims for scheme liability, violation of the Ohio Securities Act, and for common law fraud.

### A. LTSA-Related Claims

In their first set of claims, Plaintiffs allege that "GE Power executives manipulated LTSA revenues to create the illusion that revenues were growing organically when they were the result of adjustments to cost estimates" and, then, "to conceal that there was no real cash coming through the door[,] . . . dramatically increased their use of factoring." Pls.' Opp'n 14; *cf. Sjunde I*, 417 F. Supp. 3d at 404-15 (addressing "Plaintiffs' claims that GE fraudulently engaged in a variety of 'unsustainable' business practices relating to its LTSAs . . . with GE Power customers in an effort to conceal poor performance following a worldwide downturn in energy equipment usage"). Plaintiffs contend that Defendants were required, but failed, to disclose its reduction of cost estimates on its LTSAs, known as "cost adjustments," as a trend under Item 303 and, more

generally, because the failure to disclose such changes rendered various statements about the growth of the Power segment false or misleading. *See* Pls.' Opp'n 15-16; SAC ¶ 65.

To begin, the Court dismissed similar claims in *Sjunde* and *Amorosa*. *See Sjunde I*, 417 F. Supp. 3d at 407-08 (dismissing the claim of a purported "trend" of "eliminat[ing] the GE-sourced labor requirements in LTSAs, thereby raising the profit margin"); *Sjunde II*, 2021 WL 311003, at *10 (dismissing the claim of a purported "trend" of "GE's reliance on LTSA modifications"); *Amorosa*, 2022 WL 3577838, at *3 (dismissing the claim of a purported trend of GE's "reduction of cost estimates on its LTSAs"). Plaintiffs argue that the allegations in the SAC remedy the "core defect in the [*Sjunde*] class complaint," citing to a paragraph of the SAC that, in turn, cites portions of the SEC Order, *see* Pls.' Opp'n 15 (citing SAC ¶ 66, which cites SEC Order ¶ 6). But the Court previously considered the allegations in the SEC Order, which was submitted by the parties in connection with the Court's adjudication of the motion to dismiss the *Sjunde* CAC, and concluded that it "d[id] not change [the Court's] analysis" that the majority of the allegations in the *Sjunde* CAC — and, by extension, in Plaintiffs' SAC here — are insufficient to state a claim. *Sjunde II*, 2021 WL 311003, at *14.

In any event, notwithstanding Plaintiffs' additional allegations with respect to scienter, *see* SAC ¶¶ 11, 68, claims based on these statements fail for a simple reason: GE *did* disclose that it regularly revised its estimates, including due to cost changes, and disclosed the amount that these revisions had increased its earnings. *See* ECF No. 38 ("Defs.' Mem.") 16 (citing GE's SEC filings); *see, e.g.*, ECF No. 37-13, at 90 (GE's 2016 10-K, stating that "[r]evenue recognition on [LTSAs] requires estimates of profits over the multiple-year terms of such agreements, considering factors such as . . . cost changes" and noting that these "adjustments increased earnings by $2.2 billion, $1.4 billion and $1.0 billion in 2016, 2015 and 2014,

6

respectively"). Plaintiffs acknowledge these disclosures, but quarrel with them on the ground that the "[c]ost estimates [we]re only one of many factors" listed in the disclosures and argue that "the reader could not have discerned the impact of cost adjustments." Pls.' Opp'n 16.  But Plaintiffs do not explain how, if at all, the disclosures are inaccurate or misleading.

Next, Plaintiffs bring claims relating to GE's use of factoring or deferred monetization in order to meet certain cash flow targets.  Pls.' Opp'n 20-23; SAC ¶¶ 71-80.  In *Sjunde I* and *Sjunde II*, the Court sustained only two claims: those concerning (1) factoring in GE's 2016 Form 10-K and (2) GE's failure to provide adequate Item 303 disclosures related to factoring in its financial statements from 2015 on (as well as corresponding "control person" claims against Bornstein).  *See Sjunde II*, 2021 WL 311003, at *11, 13-14.  Plaintiffs claim that their corresponding claims should survive too because their SAC is "*more* detailed" than the *Sjunde* CAC.  Pls.' Opp'n 20.  But the statements of the former employee confidential witnesses alleged in the *Sjunde* CAC were critical to the Court's rulings, *see Sjunde I*, 417 F. Supp. 3d at 408-09, and, as discussed above, Plaintiffs may not rely on those statements.[3]  Plaintiffs argue, in the alternative, that their own factual allegations are sufficient to allege fraud with particularity.  *See*

---

[3] Plaintiffs argue that they corroborated the confidential witness statements with other sources, but the only other source they point to is the SEC Order, which, as discussed, must be treated as "in the nature of allegations 'upon information and belief' which cannot ordinarily form the basis of a fraud claim."  *Loreley*, 797 F.3d at 180; *see, e.g*, *In re UBS AG Sec. Litig*, 2012 WL 4471265, at *17 n.17 ("[T]he Court . . . need not consider parroted allegations for which counsel has not conducted independent investigation.").  In addition, Plaintiffs argue that "[t]he fact that these statements were sufficiently particular for the Court to rely upon them in denying Defendants' motion to dismiss claims [in *Sjunde*] . . . gives them additional indicia of reliability." Pls.' Opp'n 21.  But there is no inherent correlation between particularity and reliability, and Plaintiffs' counsel, unlike class counsel in *Sjunde*, does not, and cannot, vouch for the credibility of the witnesses.  *See, e.g.*, *VNB Realty, Inc. v. Bank of Am. Corp.*, No. 11-CV-6805 (DLC), 2013 WL 5179197, at *7 (S.D.N.Y. Sept. 16, 2013) ("By drawing its factual allegations from the statements of confidential witnesses in [another] complaint, [a plaintiff] is attempting to rely on the substance of those allegations without being held responsible for certifying that they are supported by some factual basis.").

Pls.' Opp'n 20. But those allegations are copied from the SEC Order, *see id* (citing SAC ¶ 76, which cites SEC Order ¶ 12), and the SEC made no findings regarding scienter and did not bring any scienter-based claims. *See also Amorosa*, 2022 WL 3577838, at *4 (considering and dismissing these same claims based on "the factual allegations contained in the SEC Order").

In short, Plaintiffs' LTSA-related claims must be and are dismissed.

## B.  LTC-Related Claims

Plaintiffs' next set of claims are based on alleged misrepresentations and omissions relating to GE's LTC insurance portfolio. In *Sjunde*, the Court dismissed claims based on the same statements — which are indisputably statements of opinion subject to the pleading standards set forth in *Omnicare, Inc. v. Laborers District Council Construction Industry Pension Fund*, 575 U.S. 175 (2015) — finding that the plaintiffs there had not alleged facts sufficient to establish that Defendants did not believe that their statements about the LTC reserves were true. *Sjunde I*, 417 F. Supp. 3d at 396; *Sjunde II*, 2021 WL 311003, at *10; *see* Pls.' Opp'n 9. Plaintiffs here argue that their formulation of these claims "does not suffer from the same flaws" because, in contrast to the *Sjunde* CAC, their SAC (1) incorporates facts derived from the SEC Order to show scienter, (2) alleges that GE's deficiency testing showed negative results before it was manipulated, and (3) alleges that Immelt and Bornstein falsely represented GE's internal controls. Pls.' Opp'n 9. But the Court cannot agree.

First, for the reasons discussed above, the SEC Order provides little or no aid to Plaintiffs. In fact, the SEC Order is even less helpful to Plaintiffs' claims with respect to their LTC reserve-related claims. The SEC Order states that, each year, the unit within GE responsible for monitoring LTC reserves "engaged in an impairment test . . . to evaluate whether the reserves GE held in future insurance claims were adequate," SEC Order ¶ 24, but that "GE

8

executives were not informed *until the second quarter of 2017* of . . . increasingly optimistic projections of future liabilities despite higher than expected claims. In addition, GE was *not* informed of GE Capital's . . . use of the roll-forward in 2016," *id.* ¶ 41 (emphases added); *see also* Pls.' Opp'n 13. This allegation also undermines Plaintiffs' second argument, relating to their allegations that deficiency testing revealed negative results before various assumptions were changed. Pls.' Opp'n 9-11. Although Plaintiffs allege that the relevant unit's management adopted this "roll-forward" approach, they provide no factual basis to impute that knowledge to GE, Immelt, Bornstein, or Miller, especially in light of the SEC's explicit finding that "GE was not informed of . . . the use of the roll-forward in 2016." SEC Order ¶ 41. Plaintiffs' statement that "[t]he GE Capital executives referenced [in the SEC Order] undoubtably included Sherin," Pls.' Opp'n 12, is "the language of supposition (albeit confident supposition), . . . and does not suffice" under the PSLRA, *see Sjunde II*, 2021 WL 311003, at *8.

Finally, Plaintiffs' claims related to GE's internal controls, *see* Pls.' Opp'n 13, fail for the same reason. Put simply, the allegations in the SAC do not establish that Immelt or Bornstein knew, at the time of the certifications, of the alleged internal control deficiencies. *See, e.g.*, *Woodley v. Wood*, No. 20-CV-2357 (ER), 2022 WL 103563, at *8 (S.D.N.Y. Jan. 11, 2022) ("The fact that a defendant had a duty to review the Company's internal controls is not a substitute for specific allegations that he was provided with information that demonstrated the inadequacy of those internal controls."); *In re Bausch & Lomb, Inc. Sec. Litig.*, 592 F. Supp. 2d 323, 341 (W.D.N.Y. 2008) (finding no scienter where plaintiffs did not "offer any particularized allegation[s] of an inference that management's assessment of internal controls . . . were not honestly and reasonably believed to be true when made").

Accordingly, Plaintiffs' LTC-related claims must be and are also dismissed.

9

## C. Alstom-Related Claims

Plaintiffs' final set of Section 10(b) and Rule 10b-5 claims relate to GE's acquisition of Alstom's Thermal, Renewables and Grid business in November 2015. Specifically, Plaintiffs argue that GE's $13.5 billion valuation of the Alstom assets was "artificial" because it was "based on the price that would provide [Alstom's majority shareholder] an acceptable return on its investment and not an informed review of the acquired assets," Pls.' Opp'n 26; that "no one at GE believed the Alstom assets acquired were worth" what GE paid, *id.* at 27; and that the transaction "resulted in a grossly inflated goodwill . . . that was not adjusted until GE took a $22 billion charge to goodwill . . . on October 30, 2018," *id*. Importantly, "[e]stimates of goodwill depend on management's determination of the 'fair value' of the assets acquired and liabilities assumed, which are not matters of objective fact." *Fait v. Regions Fin. Corp.*, 655 F.3d 105, 110 (2d Cir. 2011). Moreover, as Judge Cote explained in *TRS*, "[b]ecause a wide range of goodwill values could be compliant with [Generally Accepted Accounting Principles], the plaintiffs must identify particular facts supporting an inference that GE's accounting fell outside of that permissible range." 2020 WL 2306434, at *14. In addition, the parties agree that "[s]tatements estimating the fair market value of [the Alstom] assets are opinions, not matters of objective fact." *In re Gen. Elec. Co. Sec. Litig.*, 856 F. Supp. 2d 645, 653 (S.D.N.Y. 2012); *see* Pls.' Opp'n 29; Defs.' Mem. 13. To give rise to liability under the securities laws, therefore, Plaintiffs must plead that (1) "the speaker did not hold the belief she professed," (2) "the supporting fact she supplied" for the opinion was untrue, or (3) the speaker has "omit[ted] information whose omission makes the [opinion] statement misleading to a reasonable investor." *Tongue v. Sanofi*, 816 F.3d 199, 210 (2d Cir. 2016) (quoting *Omnicare*, 575 U.S. at 186, 194).

Substantially for the reasons provided by Judge Cote in *TRS*, it is doubtful that Defendants' opinion statements related to the Alstom valuation are actionable under the securities law. *See* 2020 WL 2306434, at *14 (finding that the plaintiffs "failed to plead that the defendants made misleading statements in their calculations of GE's goodwill" because their "theory ultimately rests entirely on a disagreement about the exercise of judgment"). But even if they are, Plaintiffs cannot establish scienter. A plaintiff may satisfy the PSLRA's pleading requirements for scienter "by alleging facts (1) showing that the defendants had both motive and opportunity to commit the fraud or (2) constituting strong circumstantial evidence of conscious misbehavior or recklessness." *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 99 (2d Cir. 2007). Plaintiffs' attempt to establish scienter pursuant to the first prong fails because the motives that Plaintiffs suggest — namely, that Defendants wanted "to convince investors that they were successfully executing the strategic 'pivot' away from GE Capital and back to GE's industrial roots" and that Immelt wanted "to escape the long shadow of his legendary predecessor," Pls.' Opp'n 32 — are not "motives" for purposes of the scienter inquiry at all, *see, e.g.*, *ECA, Loc. 134 IBEW Joint Pension Tr. of Chicago v. JP Morgan Chase Co.*, 553 F.3d 187, 199 (2d Cir. 2009) ("Motives that are common to most corporate officers, such as the desire for a corporation to appear profitable and the desire to keep stock prices high . . . do not constitute 'motive' for purposes of this inquiry.").

Plaintiffs' attempt to establish scienter pursuant to the second prong fares no better. First, Plaintiffs rely on various statements, quoted in *Lights Out* and Immelt's own memoir, *Hot Seat*, to establish that some within GE believed that the Alstom valuation was too high or that the deal was ill-advised. Pls.' Opp'n 30; SAC ¶¶ 107-112, 119. Plaintiffs provide no evidence, however, that the reservations about the transaction or disagreements about accounting judgments credited

11

to an unnamed "member of the GE Power deal team" and an unnamed "GE executive," Pls' Opp'n 30, represented a consensus view — the allegation that "no one at GE believed" that the valuation was accurate appears nowhere in the SAC — let alone that Defendants agreed with, or even knew about, the relevant statements. In fact, Plaintiffs acknowledge that *Lights Out*, on which they otherwise rely, reported that Immelt and Bornstein "never heard any *serious dissent*." Pls.' Opp'n 31. Plaintiffs argue that "'[s]erious' is subjective and *Lights Out* made clear there was dissent," *id.*, but they provide no authority for the proposition that internal disagreement about a transaction constitutes "strong circumstantial evidence" of wrongdoing, *ATSI Commc'ns, Inc.*, 493 F.3d at 99. Next, Plaintiffs point to an allegation from Immelt's book, *Hot Seat*, that Steve Bolze, the head of GE Power, told Immelt that he thought that GE "should get [Alstom] for a lower price." *See* Pls.' Opp'n 31; SAC ¶ 119. But the SAC does not allege that Bolze told Immelt that the valuation was inaccurate or that he thought the deal should not be consummated at the agreed-upon price.[4] Finally, Plaintiffs allege that "reliance on purported synergies to justify 50% of GE's valuation of Alstom further reinforces a strong inference of scienter," Pls.' Opp'n 32, but they fail to plausibly allege that Defendants knew or should have known that the calculation of expected synergies, which is indisputably an exercise in accounting judgment, was "outside of th[e] permissible range" of values, *TRS*, 2020 WL 2306434, at *14.

---

[4] Defendants argue that Plaintiffs have incorporated by reference the full text of *Hot Seat* in their SAC and quote additional sections of the book that they claim undermine Plaintiffs' selections. *See, e.g.*, Defs.' Mem. 30-31. Plaintiffs respond that they "only quoted a small portion of Immelt's memoir" and that "'[l]imited quotations from or reference to documents that may constitute relevant evidence in a case is not enough to incorporate those documents, wholesale, into the complaint.'" Pls.' Opp'n 33 (quoting *Sira v. Morton*, 380 F.3d 57, 67 (2d Cir. 2004)); *see also, e.g., Jones-Cruz v. Rivera*, No. 19-CV-6910 (PGG), 2021 WL 965036, at *3 (S.D.N.Y. Mar. 14, 2021). As to *Hot Seat*, the Court agrees with Plaintiffs and therefore does not consider Defendants' quotations.

At bottom, the scienter inquiry is "inherently comparative," requiring the court to "consider plausible, nonculpable explanations for the defendant's conduct, as well as inferences favoring the plaintiff," and to permit a claim to proceed "only if a reasonable person would deem the inference of scienter cogent and at least as compelling as any opposing inference one could draw from the facts alleged." *Tellabs, Inc. v. Makor Issues & Rights Ltd.*, 551 U.S. 308, 323-24 (2007); *see also Sjunde II*, 2021 WL 31100, at *6. Ultimately, Plaintiffs' claims related to the Alstom transaction fail as a matter of law because, after consideration of all the evidence marshaled by Plaintiffs, the alternative inference — that Defendants (however imprudently) believed the transaction was in GE's best interest — is more compelling than the inference of scienter. Accordingly, Plaintiffs' Alstom-related claims must be and are also dismissed.

### D. Other Claims

Given the absence of a "primary violation," Plaintiffs' Section 20(a) "control person" claims against Immelt and Bornstein, SAC ¶¶ 301-07, fail as a matter of law as well, *see, e.g.*, *Arkansas Pub. Emps. Ret. Sys. v. Bristol-Myers Squibb Co.*, 28 F.4th 343, 356 (2d Cir. 2022). In addition, Plaintiffs' underdeveloped claim for scheme liability fails because the SAC alleges misstatements and omissions, not "inherently deceptive conduct." *In re AT&T/DirecTV Now Sec. Litig.*, 480 F. Supp. 3d 507, 534 (S.D.N.Y. 2020). Plaintiffs argue that the Supreme Court's decision in *Lorenzo v. SEC*, 139 S. Ct. 1094, 1104 (2019), "rejected the assertion that scheme liability is inapplicable merely because a false or misleading statement is at issue" and made reliance on the pre-*Lorenzo* case law that Defendants cite, *see* Defs.' Mem. 38-39, improper, *see* Pls.' Opp'n 37-38. Just over two months ago, however, the Second Circuit rejected Plaintiffs' argument, holding that *Lorenzo* did not abrogate prior case law holding that "misstatements and omissions cannot form the 'sole basis' for liability under the scheme subsections." *SEC v. Rio*

*Tinto plc*, 41 F.4th 47, 53 (2d Cir. 2022) (citing *Lentell v. Merrill Lynch & Co.*, 396 F.3d 161 (2d Cir. 2005)). In so holding, the Second Circuit emphasized that "[p]reserving distinctions between the subsections assures that private plaintiffs remain subject to the heightened pleading requirements [of the PSLRA] for Rule 10b-5(b) claims." *Id*. at 54. "An overreading of *Lorenzo*," the Court cautioned, "might allow private litigants to repackage their misstatement claims as scheme liability claims to evade the pleading requirements imposed in misrepresentation cases." *Id.* at 55 (internal quotation marks omitted). In light of the Circuit's decision in *Rio Tinto*, Plaintiffs' scheme liability claim must be and is dismissed.

That leaves only Plaintiffs' state-law claims for common law fraud and pursuant to the Ohio Securities Act, O.R.C. § 1707.43. *See* SAC ¶¶ 308-20; Pl.'s Opp'n 38-40. Pursuant to Title 28, United States Code Section 1367, a district court has discretion over whether to exercise jurisdiction over state-law claims "that are so related to claims in the action within [the] original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution." 28 U.S.C. § 1367(a). The Supreme Court and the Second Circuit have made clear, however, that, as a general rule, "when the federal claims are dismissed, the state claims should be dismissed as well." *In re Merrill Lynch Ltd. P'ships Litig.*, 154 F.3d 56, 61 (2d Cir. 1998) (per curiam) (internal quotation marks omitted); *see also Bright Kids NYC Inc. v. Kelly*, No. 19-CV-1175 (JMF), 2021 WL 3931876, at *2 (S.D.N.Y. Sept. 2, 2021). Here, there is no basis to depart from that general rule. That is, given the relatively early stage of the case, the traditional "values of judicial economy, convenience, fairness, and comity" that the Court must consider do not counsel in favor of exercising jurisdiction. *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 (1988). Accordingly, Plaintiffs' state-law claims are dismissed without prejudice to refiling them in state court. *See* 28 U.S.C. § 1367(c); *see also, e.g.*, *Banco Safra S.A.-Cayman*

14

*Islands Branch v. Andrade Gutierrez Int'l S.A.*, No. 16-CV-9997 (JMF), 2018 WL 1276847, at *5 (S.D.N.Y. Mar. 8, 2018) (dismissing state-law claims under similar circumstances).

## CONCLUSION

For the reasons stated above, Defendants' motion to dismiss must be and is GRANTED. That leaves the question of whether Plaintiffs should be granted leave to amend. Although leave to amend should be freely given "when justice so requires," Fed. R. Civ. P. 15(a)(2), it is "within the sound discretion of the district court to grant or deny leave to amend," *Broidy Cap. Magmt. LLC v. Benomar*, 944 F.3d 436, 447 (2d Cir. 2019) (internal quotation marks omitted). Here, Plaintiffs do not request leave to amend, and the Court declines to grant them leave *sua sponte* for several reasons. First and foremost, Plaintiffs were already granted two opportunities to amend — first, in response to the Court's decision in *Sjunde*, see ECF Nos. 15, 18, and, second, in response to Defendants' initial motion to dismiss, *see* ECF No. 23.[5] Moreover, when granting Plaintiffs leave to amend in response to Defendants' initial motion to dismiss, the Court expressly cautioned that "Plaintiffs will not be given any further opportunity to amend the complaint to address issues raised by the motion to dismiss." ECF No. 26. In light of that history, Plaintiffs' "failure to fix deficiencies in its previous pleadings is alone sufficient ground to deny leave to amend *sua sponte*." *Transeo S.A.R.L. v. Bessemer Venture Partners VI L.P.*, 936 F. Supp. 2d 376, 415 (S.D.N.Y. 2013) (citing cases). Finally, Plaintiffs do not request leave to amend for a third time and do not suggest that they are in possession of facts that would cure the problems with their claims. *See, e.g.*, *Clark v. Kitt*, No. 12-CV-8061 (CS), 2014 WL 4054284, at *15 (S.D.N.Y. Aug. 15, 2014) ("A plaintiff need not be given leave to amend if [it]

---

[5]   On top of that, Plaintiffs could have moved for leave to file an amended complaint after the Court's decision in *Amorosa*. They did not.

15

fails to specify how amendment would cure the pleading deficiencies in [its] complaint."). Accordingly, the Court declines to grant Plaintiffs leave to amend *sua sponte*. *See, e.g.*, *Bromfield-Thompson v. Am. Univ. of Antigua*, No. 20-3855, 2021 WL 4931953, at *2 (2d Cir. Oct. 22, 2021) (summary order) (finding no abuse of discretion where the plaintiff "did not request leave to amend her complaint a second time in the district court, and the district court clearly warned her that she would forfeit the chance to address any issues raised in the motions to dismiss if she did not address those issues in her amended complaint.").

The Clerk of Court is directed to terminate ECF No. 23 and close this case.

SO ORDERED.

Dated: September 28, 2022
      New York, New York

                                        JESSE M. FURMAN
                                    United States District Judge